CarutheRS, J.,
delivered the opinion of the Court.
The Bank recovered three judgments against C. L. Kelson in 1854, amounting to between seven and eight thousand dollars, upon which executions were issued and returned “ no property found.” Matthew Nelson, the father of Charles L., died in 1856, leaving a will in which he devised and bequeathed all his land, slaves, and other property to his widow for life, and then to his children, including the said Charles. The original bill was filed 1st January, 1857, to subject the remainder of Charles to the payment of these judgments, and in the mean time to enjoin him from disposing of the same. Injunctions and attachments were issued. On the 27th of April, 1858, an amended bill was filed alleging that the said will was a nullity as to the laud because it was attested and proved by two or more of the sons, who were interested under it, in the remainder of the property, real and personal, as aforesaid, and claiming that the land descended to the heirs, and that the interest of their debtor should be made liable to the judgments of complainant. The will was proved in common form at the November term, 1856, of Rutherford County Court, by the said attesting witnesses, without opposition. They charge that the will, though void for want of proper attestation, constitutes a cloud upon the title, so that the interest of their debtor would not sell for its value, and ask that the cloud be removed, by declaring that the will is void, or that an issue of devisavit vel non be ordered, to be tried at law, to test the validity of the paper. In the event that the will is sustained, they pray for a decree to sell the remainder interest of their debtor to satisfy their judgments.
The fact that the witnesses to the will were devisees and legatees under it, was admitted. Whereupon the court held that upon the suggestion of fraud or irregularity in'the exe *636 cution or attestation under the act of 1784, the original paper should be produced, and took jurisdiction to declare it invalid on that ground, and did so decree, as to the realty, though good as to the personalty; and declared that the present interest of Charles to the land as heir, and his remainder in the personalty should be sold for the debts of complainant. From tins decree defendants appealed.
The 6th sec. of the act of October, 1784, ch. 10, Code, secs. 2198-9, makes attested copies of wills admitted to probate, equal evidence to the originals, but provides that if fraud in “ drawing or obtaining,” or “any irregularity in the executing or attestation,” is “ suggested,” the original shall bo produced. What effect this is to have is not well defined, and as this case, in our view, does not require an exposition, it will not be attempted, but left for a case that necessarily raises the question, when more consideration may be given to it. It is insisted for complainants that under that proviso, power may be exercised by a Chancellor, to disregard the probate, and without ordering an issue to try the validity of the will, or suspending his action until the same may be done by a proper proceeding in the County or Circuit Courts, for a re-probate in solemn form, determine the question of the validity of the will, on the ground that the witnesses to it, and by whom it was proved in common form, were not such as are required by the 11th section of the act of April, 1784, ch. 22, to make a “ good and sufficient” will for lands. The position assumed is that when the “ suggestion” referred to by the proviso is made, no rights, as to realty, can be successfully asserted under the will without proving it by legal witnesses on the trial, as at common law. The Chancellor assumed this jurisdiction and declared the will void, as to the land, because the attesting witnesses were not such as are required by the said act, but were “ interested in the devises” of the will. On the other hand it is insisted that he had no such jurisdiction, but that the probate in the County Court, having general and exclusive jurisdiction on the subject, was binding upon everybody until revoked by *637 calling for a re-probate, and the trial of an issue of clevisa-vit vel non in the Circuit Court. But as we have said, those questions need not now be decided as this caso can be disposed of upon other grounds. '
We think the complainant does not occupy a position to question the validity of the probate, on the ground assumed. The will has been proved in a court of general jurisdiction of those subjects. No one, without an interest in the estate can contest a will or call for a re-probate. The complainant is only a creditor of one of the devisees, and can only act upon his rights. The debtor is content with the will, chooses to avail himself of no objection to it that may exist, although it reduces a fee in the land to which he would be entitled by law, to a remainder interest. If he acquiesces in its validity by waiving his right to object and contest it, for the incompetency of attesting witnesses, or on any other ground, how can his creditor, who has to pass through him, to reach the property, make the objection for him ? But this case is still stronger. Before the filing of this bill, and previous to the probate, this defendant, with the other devisees, eleven in number, being aware of the difiiculty which existed in relation to the attesting witnesses, entered into a written agreement, binding themselves to abide by the provisions of the will, and permit it to go to probate, without objections. This course seems to have been the result of an honest and laudable desire on their part, to carry out, and not frustrate, the deliberate and dying wishes and purposes of their father, by waiving the advantages the law would give them by an opposite course. It was the surrender of a present for a future interest, for the benefit of their mother. Now, upon what principle can a creditor of any one of the devisees and legatees, disregard and set aside this arrangement? We think it clear that it cannot be done ; and that, so far as the complainants are concerned at all events, the will is to be taken as well proved and valid, both as to the realty and personalty. Yet by the will the debtor has a vested remainder in the land and slaves, and that is attached in this bill. There is no *638 doubt but that a vested remainder in land may be sold for debt, even by an execution at law, but that the law is otherwise in the case of slaves, was held in Allen v. Scurry, 1 Yerg., 36, and that decision has never been disturbed, but is re-affirmed in Lockwood v. Nye, 2 Swan, 518. But in this last case, the law is laid down differently as to the power of a court of equity, to decree a sale of a remainder in slaves for the debts of the remainder man under attachment bills, and ¶ e adhere to that case, and approve of the reasons upon which it is sustained. All that a man has should in some form be subject to his debts, more especially since all proceedings against his body have been refused by the mild and humane policy of our law. It follows from this conclusion that the complainants are entitled to a decree to sell the remainder interest of the debtor, both in the land and slaves, for the satisfaction of their judgments against him. The purchaser will tato all the rights of Charles L. Nelson, under the will, and no more.
The decree of the Chancellor will be so modified as to conform to this opinion. The costs here and below will be paid out of the proceeds of the sale.